Our first case this morning is case number 416-0733. John, is that Schriefer? Is that how you pronounce that? I believe so, yes. Is that correct? John Schriefer v. EFF, Inc. And for the appellant we have Mr. Torricelli? Yes, yes. Over here, okay. And then for the athlete we have, are you Mr. Gordon or Mr. Summers? Summers. All right, Mr. Summers. You may proceed, counsel. Thank you, Your Honor. May it please the court, counsel. This matter arises out of an altercation that occurred near a champagne bar owned by my clients, the appellants in this case, Your Honor. This altercation occurred on December 3, 2012, and it gave rise to a claim under the Illinois Dram Shop Act. There is no dispute that the plaintiff, John Schriefer, was injured. There are plenty of disputes after that. There are two AIPs involved in the matter, and Your Honor, if I could remind the court that the term AIP is used in the context of a Dram Shop claim is an alleged intoxicated person. These two individuals accused of being intoxicated by consuming liquor sold by the defendants are Troy Myers and Shane Valentine. It is incumbent upon a plaintiff in a Dram Shop case to prove four elements, essentially. That's been the long-standing law in Illinois, and that arises from the seminal case of Moore v. Jill. The first element is that the AIP was intoxicated. The second element is that the defendant either gave or sold liquor to the AIP. The third element is that the liquor consumed actually caused the intoxication. And finally, that the intoxication was at least one cause of the occurrence. As to certain of these allegations, there's no dispute. There is no dispute, Your Honors, that the defendants sold or gave alcohol to the AIPs. Likewise, there's no dispute that the plaintiff was injured. After that, there's quite a bit of varying testimony on the issue of intoxication, and I'd like to briefly outline that if I could. Procedurally speaking, Your Honors, the defendants moved for summary judgment in this case, arguing that there was insufficient lay opinion testimony to ever support a finding of intoxication on the part of the jury. That motion was denied. Plaintiff likewise moved for summary judgment, arguing the contrary, that there was intoxication and cause proved as a matter of law. That was disputed. Here are the genuine issues of material fact that, with all due respect, I suggest beg that this ruling be overturned. As to cause, the plaintiff testified that, in his opinion, the cause was motorcycle gang affiliation. The plaintiff was a longstanding member of a motorcycle gang by the name of, excuse me, Hellbound. And this motorcycle gang was attempting to make some inroads, excuse me, Stone Cold. Plaintiff was a member of Stone Cold. They were trying to make some inroads, this Hellbound gang, into Champaign. That's what plaintiff cited as the cause. Troy Marchstuller, this alleged key witness who accompanied the plaintiff on the day of the incident, says the problem was a prior feud between the plaintiff and the AIP, Shane Ballantyne. That was his citation of what the cause was. Now, counsel, would you say that that testimony, that deposition testimony, was definitive or was it more along the lines of, you know, they started this other motorcycle club or one time we had a disagreement, but was it, that's why they attacked me? Certainly, I think the jury could conclude that, Your Honors. And without being anecdotal, I can recall as a young lawyer trying actually my first jury trial in Shelby County where two cousins were fighting over a coon dog. One of them had consumed a case of beer that day. My argument to the jury was the fight would have occurred anyway in the absence of intoxication, given this longstanding dispute over the coon dog. The jury was up 15 minutes and found in favor of the defendant. Not that that has any authority here, but it certainly cites a similar case where you've got a conflict as to what the potential cause of the fight was. To respond to your question, Your Honor, I think that who would know better than the plaintiff himself as to what may have been the source of the dispute? And that's why I asked the question about how did the plaintiff characterize that statement, because I don't necessarily agree that the plaintiff indicated in his deposition that that was the cause. I don't know how pointedly that was suggested, Your Honor. I know that I cited the testimony, and I would hope that it certainly fit my argument that he cited a potential cause as the motorcycle gang affiliation. I thought I asked him very pointedly, Your Honor, and I'm looking quickly at my brief, and I'll return to that if I can locate that. But certainly in his opinion, that has something to do with the fight or the altercation. Whether it was definitive or not, I don't know. That, I suggest respectfully, is left for a jury to determine. And how do we look at that in consideration of the fact that you mentioned one of the things the plaintiff has to prove is that the intoxication was a cause, not the only cause, as we all know? I don't think, again, Your Honor, I don't think that could be found as a matter of law. And I point to that case that I cited in my brief, that Clifford case, which I think is a great example of an even bigger stretch in terms of whether something was a cause and should have been concluded to be a cause as a matter of law. The fella is out drinking in the tavern all day, and he goes to his vehicle late at night. He dies in the vehicle. This is when they had the inconsequence actions of a dram shop, not just the buy actions. And he's out in his vehicle, and he dies. He succumbs. And the family then was allowed to sue for lost means of support. And the court concluded that even though his blood alcohol was .159, it was a question of fact as to whether the asphyxiation was caused by the alcohol or by carbon monoxide poisoning. So I think that the only courts, Your Honor, have taken great length at allowing juries to determine these issues. Now, was that a summary judgment case? I'm not sure, Judge. I think it was a verdict that was upheld in favor of the defendant. Moving on, Your Honor, to at least what I believe creates genuine issues of material fact, if for no other reason than inconsistent testimony, is witness Mark Stuller's testimony that it was this prior problem between the two that started the fight. In that case, there's plenty of testimony. There was testimony that the two AIPs were scoping out the plaintiff that evening. They'd been to another tavern. They called ahead wanting to know where the plaintiffs were that night and met up with them at the Phoenix Tavern. Okay. Let's back up a little bit. There was testimony that they were scoping out the plaintiff and that they personally called wanting to know where the plaintiff was or was the testimony by, I can't remember, Mark Stuller, I think. I thought he testified. Somebody called him and said, hey, they've been over here drinking. They're on the way to where you are. Not to mislead, Your Honor. There was testimony that indicated there was an attempt by the AIP to locate the plaintiff that evening. And whose testimony was that? I'm sorry? From whom did that testimony come? Allow me to review. I'm not sure of the source, Your Honor, but I'm certain it was there. I think it came from a statement by Mark Stuller himself, who may have spoken to one of the AIPs post-incident, that there was an effort to see where they were that evening, and there was testimony ad nauseum about a prior dispute with the AIP and the plaintiff in the parking lot of a Walmart, to which I think the witness, Mark Stuller, actually witnessed. So, Judge, permit the record to stand. I don't want to take a lot of time trying to locate that. But I did review the brief before I started argument today, and I recollect there certainly being testimony about them knowing the plaintiff was present at the bar and the plaintiff not being concerned about that, according to Mark Stuller. So I would respectfully request that the Court defer to the citations that I've included in the brief. Mr. Torsali, can I ask you a question? In this case, it seems to me that the plaintiff had an affidavit that was filed by both himself and Mark Stuller. Yes, Judge. And Mark Stuller's affidavit in particular related that he felt the attack occurred, or maybe it was his deposition testimony, because the Myers and Valentin were intoxicated. Yes. But there were no counter-affidavits. You didn't file any affidavits. No, I didn't see a need, Judge, because his affidavit created genuine issues of material fact when you compare it to his deposition testimony and when you compare it to the testimony of the plaintiff. I don't think it was necessary that a counter-affidavit be filed to contradict his testimony when there's so many contradictions. And I can name some of those, Judge, that arise from the record itself and the depositions. One of them is that the plaintiff himself testified that when he saw Valentin initially, he did not appear intoxicated and that only later did he appear intoxicated based on his, quote, mean face. The plaintiff knew nothing about his consumption of alcohol other than seeing a beer in front of him. No testimony of unusual behavior, no lay opinion testimony, which is necessary in the absence of expert testimony with regard to intoxication. That standard is clear and very longstanding in Illinois regarding what's taken to establish intoxication. He had no real idea what Shane had consumed. These inconsistencies alone between the plaintiff's testimony and Shane Valentin's affidavit, excuse me, Markstaller's affidavit and deposition create genuine issues of material fact. What are the inconsistencies? Well, if they're not inconsistencies, they're certainly differing testimony. I can go further. Markstaller had no evidence in that same affidavit regarding the conduct of the AIPs. Only consumption, only the amount consumed by the AIPs. Well, what about talking to them in the bathroom? The single piece of evidence that I believe existed was that he, quote, had slurred speech, which frankly, Your Honor, I think supports the proposition that the jury needs to determine whether that single indicia I think is a stretch, frankly, to support a finding of intoxication, even as a matter of law, is sufficient. The guy is testifying and I watched him drink five or six cocktails of Jim Beam. Right. He did. Consumption alone is never evidence of intoxication. And then visits him or talks to him in the bathroom and the guy's speech is slurred. He said he had slurred speech. That was the single bit of testimony I suggest that arose. And his companion was rowdy. He probably thought both of them were intoxicated. Rowdy, but having a good time, and then characterized him as high-strung anyway. Judge, I agree. These are all the reasons that underpin, I think, the need for a jury to determine these issues. I wholeheartedly agree. I've cited some of this, but certainly these create genuine issues of material fact. In that case that I've cited, Judge, the fellow drank three drinks per hour from 5.30 to 1.30 a.m. And the jury was left to determine whether his death was caused by the intoxication or the asphyxiation. Illinois courts, I suggest, have taken great stretch to allow juries to hear the issues of intoxication. If I could go further and conclude here, Your Honors, there's testimony from Mark Stoller's affidavit, as you suggest, that there was consumption. I agree. Consumption alone never establishes intoxication. There's no evidence regarding the appearance or conduct of Shane Valentine in Mark Stoller's affidavit. There is, Your Honor, the single testimony about the slurred speech in his deposition. He says in his affidavit that the fight would not have happened but for the intoxication. That's Mark Stoller. Later in his deposition, he says, I think the problem with the fight was the feud out at Walmart that happened a month beforehand. So there's an inconsistent, or at least genuine issue of material fact. Well, Mr. Torsali, your client is the bar and the bar owner, is that right? Yes, Your Honor. I mean, would it have been difficult for somebody to get an affidavit from Valentine or Myers, and in that affidavit they swear under oath that the reason they started the fight was because of, not because they had been drinking, that they were sober, but they were mad at him for other reasons. Then you create a genuine issue of material fact. With all due respect to the court, I think genuine issues of fact can be created by the evidence that existed both in the record, in the affidavit, the internal, I think, inconsistencies or at least genuine issues of material fact within the testimony. It seems so simple to me that you wouldn't get a summary judgment order in the first place if you had that affidavit. You know, the judge in this case granted summary judgment. What I'm saying is there's nobody who would grant a summary judgment if there was a counter affidavit saying, it could be an eyewitness who said they did not appear intoxicated to me. Then you've got a jury. I just don't, again, Your Honor, with all due respect, I don't believe that the technical counter affidavit is needed if there's other evidence that, in my humble opinion, under Illinois law creates genuine issues of material fact. So I agree that there could have been one potentially. However, Troy Myers was incarcerated at the time, and Shane Ballantyne's whereabouts were at least unknown to me to answer your question. And it's not off the record to satisfy your curiosity. Having said that, Judge, again, I think the rules of evidence and the rules as it relates to the summary judgment still clearly would allow for this motion for summary judgment to have been denied based upon my citation to the record, which I will conclude in highlighting that. Mark Feller says when he first sees Troy Myers, they're laughing and giggling and having a good time. Later, as Justice Nick pointed out, he sees him with some slurred speech. Jury questions. He sees him consuming alcohol. He had been. Absolutely. Absolutely. One time he's giggling and laughing, having a good time. Next time he's allegedly intoxicated. Once again, I think jury issues. Troy Mark Feller's testimony regarding the type and amount of liquor consumed changes. In his affidavit, it's beers, several beers. In his deposition, no mention of beers. It's mixed drinks or shots. Is that a material fact? Is that a material fact? As to how he became intoxicated, whether it was beer or something else, is that material? Especially when I don't concede that he was. Especially when I don't concede that there's any lay opinion testimony to support it. So I do believe it is perfect, Judge. I do. The jury in that case, that Nakes case, was still allowed to determine whether that fellow was intoxicated when he consumed three beers or three mixed drinks an hour for literally ten hours. That was not a summary judgment case. It was a pulling a verdict. There are other cases where there are similar rulings, Your Honor, where there's a plentiful drinking. Is there one case that you cite that was a summary judgment case? I don't know, Your Honor, but I suggest the standard of review would be similar, if not the same, in as much as. With a motion for summary judgment, if there are undisputed facts asserted by the plaintiff that are not contradicted, that it entitled them to judgment as a matter of law, then summary judgment is appropriate. I realize you're saying that, you know, there are disputed issues of material fact, but do you agree that that is the standard with respect to summary judgment? If there are undisputed facts that entitle them to judgment, then they're entitled to summary judgment. Well, not to sound flip, Your Honor, but in my 33 years of practice, I think the distinction is really without a difference in terms of whether or not the trial court upholds a verdict or upholds or denies a summary judgment motion at the end of the day. And what I mean by that is there has to be at least some evidence that's contrary that creates a genuine issue of material fact. The standards are different, the pedigree, I agree, but I think that in this case, I can attack the granting of the summary judgment because, in fact, there were genuine issues of material fact, be it in the form of upholding a verdict or denying a motion. I don't know, Your Honor, that it's necessary that I present evidence that really mirror images or combats directly that presented by the plaintiff, meaning he's drunk, no, he's not. I can establish that there are a myriad of issues that a jury could determine. The single most important, Your Honor, I think is would this fight have occurred anyway, even in the absence of alcohol. Juries can conclude that. They concluded that in the Nagus case and the four other cases that I cited where you have even more evidence, I suggest respectfully, more evidence than this case. So my point is it may not be good evidence, it may be a losing case at trial, but the defendant's entitled, I think, to present the case to the jury and let the jury decide what caused this incident. Would it have happened anyway if Shane Valentine had been sober, assuming he was intoxicated? That's a legitimate question, giving what I think is a dispute, a feud, between these gentlemen. I thank you. I believe my time is up. You actually have until the red light comes on. Oh, I'm sorry. It's up to you. Sorry, Judge. No problem. So that's frankly my argument. I'd ask the Court's indulgence to review my citations regarding the issue between the dispute and them being at another bar and essentially, I think stalking is the wrong word, but following them and anticipating a fight that evening. That's way before any known consumption of alcohol by Shane Valentine or Troy Myers. And I'd like to also add, Your Honors, that Troy Myers, really, there's no testimony about consumption of alcohol. The AIP, I think, that's really the issue here is Shane Valentine. I think that's really where we're playing with the rest of this case, and I think that's probably the Court's issue is the Shane Valentine consumption. Bill may disagree with me. He can tell you that if he wishes. Thank you. Thank you, Counselor. All right. You'll have additional time on rebuttal if you desire. Thank you, Judge. Mr. Summers. May it please the Court, Your Honor. I respectfully disagree with Counsel about the genuine issues of fact. I think it's obvious here that there aren't any. When we filed our motion, the summary judgment, we attached the depositions of the plaintiff and of the witness, Mark Stuhler, and we attached his affidavit and the request to admit documents and facts. At that point in time, the burden then shifted to the defendants to come with something to contradict or at least oppose the elements of the offenses that we claim, and that didn't happen. When you look at the affidavits and the depositions, and it's obvious you have looked at them and you're aware of the contents, there's all of the elements of necessary elements to prove our cases have been established. The trial judge in this case, he said the same thing. He looked at that and he said, you know, what do you want me to do? You have no opposition. You haven't filed anything. You haven't moved to strike the affidavits. You haven't attacked the content of the depositions in any way. Maybe not necessarily a counter affidavit, but some kind of a motion to attacking the use of whatever content was in those documents. Didn't even do that. And I cited a case that says that you should maybe take that approach if you can't obtain counter affidavits. The other thing that occurs to me is that we have Caroline Daniels. She was the owner and manager of the corporation that was the licensee. She was there. She was present.  So she was available. We could have gotten an affidavit from her. She saw these same people. And then you have the bartender, it's her son, and you don't have anything from him. And I think Mark Stoller testified there were over 20 people in the establishment during the period of time that he was there. Undoubtedly, I'm just thinking out loud that the bartender or Caroline Daniels, the owner, would certainly know some of these people from prior contact or coming into the business. Certainly they would have been available to say, oh, yeah, I saw these two drunks in there. And they weren't drunk. They were fine. Those kind of things were available, and they didn't do it. So the trial court in this case, he looked at what was presented to him and said, basically tied my hands. Now, what about this representation by opposing counsel that the alleged intoxicated individuals were drinking at another bar, were looking for your client, and came there stalking your client? I disagree with that. I don't think there was. I think in the Mark Stoller deposition there was some question that he had been in telephone conversation with. Someone called him and said, hey, they're here drinking and they're on the way there. But I don't, you know, the effect of that, who knows what that was. So any suggestion that they were looking for your client? Not that I'm aware of. And my client certainly, when he walked in that establishment, he saw Shane Valentine sitting at the bar, and he wasn't concerned about it. But he said he didn't see Troy Myers. Now, Mark Stoller sat there and watched both of them. And it's also, at least from my perspective, he sees them, and they're there having a good time. They're drinking, and then his comment was they appeared to be okay. And he also, you know, he had known them for a long time. He said over 20 years, both of them. He wasn't friends with Troy Myers, but he was friends with Shane Valentine. He'd been out drinking with him in the past. He'd seen him in other taverns. He had a pattern, this pattern apparently when he gets a lot of alcohol in him, he must get mean and wants to hit people, he said. Well, it's obvious what happened here. They're in the tavern, they're drinking, and he reaches that level. And that's really what happens here. There's no altercation. There's no confrontations inside this place with a plaintiff or these two rowdy guys that attacked my client. And all the other things that counsel's talking about, speculation and guess. He's trying to reach some kind of a conclusion by innuendo, and there are no facts that lead to that. No matter what direction you go, you always end up back with the liquor. Load these two guys up with lots of alcohol. Their mannerisms change. How they conduct themselves and their thinking ability and so forth gets altered with the alcohol, and you end up with somebody like Mr. Schrafer getting attacked. Now, whether they were friends, whether they didn't like each other, it wasn't the cause of this. I mean, you can take the incident that they talked about at the Wal-Mart, that they had an argument at the Wal-Mart. There was no fight. Nobody beat anybody up. There was nothing like that. But there was no alcohol either. So now you put the alcohol into the mix, and you're right back. No matter what approach you take, you're right back to these guys sitting in this tavern, and they went over the line. Now they're at the alcohol or drunken stage, and this thing happens. And so it's obvious that they were drunk. It's obvious what the cause of the occurrence was. The alcohol or one of the causes. And there's nothing in the record offered by the defendants to dispute that. And so the trial court, he went through all these things, and this is what he found. And he said, if you didn't file a counter-affidavit, there's nothing else I can do. And so the end result is judgment. And we think the judgment should be affirmed based on the documents and the things we've submitted to the court. Thank you. Thank you, counsel. Any rebuttal, Mr. Torricelli? I think sophomore would be too strong of a word to suggest to learned counsel that there's a requirement that I file a counter-affidavit. This argument would be along the lines of an automobile case where the plaintiff testified that she was uncertain whether the light was yellow or green, and there was an affidavit by an independent witness that said it was green, the suggestion being that a counter-affidavit must be filed to say it was red to survive a summary judgment. That's what I say here. I say that there's ample testimony from the plaintiff and Mark Stoller that agreed genuine issues of material fact. They don't have to be found in a counter-affidavit. It's pure speculation, I would suggest, that my client or her son or the attendees at the bar somehow knew everything and I didn't provide an affidavit from them. That isn't the case, Your Honor. And I think it's an off-the-court discussion of counsel's theory as to why there may not have been one, but I suggest it wasn't necessary that there could be one at all. I've got testimony. I've got evidence. It doesn't have to be in the form of a, quote, counter-affidavit to directly refute the testimony of Mark Stoller. Mark Stoller testified he was mad at Jack about something. They had an altercation. I don't know. He clarified this testimony. He said they had their own problem to start with. He repeated this position, and he said they had a problem. They'd thrown words before. The prior altercation occurred between Valentine and the plaintiff at Walmart. I think that the tendency in this case, Your Honors, and it certainly was mine, is to get caught up in your own case and your own theories and to forget the rules of evidence, that the jury is entitled to determine these issues as to what caused that fight. It is not a slam dunk that these people were intoxicated. Not at all. There is no golden rule that if you drink five or six shots and you have slurred speech at some point you're automatically intoxicated. As a matter of fact, the only testimony about intoxication that favors plaintiff is that they consumed alcohol and that one of them had slurred speech. The rest, I suggest, is if not contrary, it certainly creates genuine issues of material fact. The affidavit of Mark Stoller is inconsistent with this testimony. The plaintiff himself said, I don't know if they were intoxicated absent this mean face at the end of the day, just before the altercation. There is no lay opinion testimony other than the slurred speech, and that's rather vague, I would suggest, and there's plenty to the contrary. So it's not my argument to convince the court that this is a great case to defend. That isn't required of the defendant. It's my suggestion that I'm entitled to present the case to a jury and that there are a number of reasons contained in the brief in terms of evidence, not in the form of a counter affidavit, but I don't think that's a requirement. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess until the next case.